**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **PUERTO RICO ELECTRIC POWER AUTHORITY, through the Third-Party Procurement Office (3PPO), under Regulatory Compliance Services, Corp. (RECOMS)**<br>*Plaintiff,*<br>v.<br>**NFENERGIA LLC ("NFE"), NEW FORTRESS ENERGY INC. ("NFE PARENT"), ATLANTIC ENERGY HOLDINGS LLC ("ATLANTIC"), INSURANCE COMPANIES A, B, AND C; and CORPORATIONS X, Y, AND Z**<br>*Defendants.* | CIVIL NO. 3:26-cv-01423 (PAD)<br>RE: BREACH OF CONTRACT; COLLECTION OF A LIQUID AND ENFORCEABLE SUM; DAMAGES; DECLARATORY JUDGMENT<br>Jury Trial Demanded.<br>(Diversity: 28 U.S.C. § 1332) |

**AMENDED COMPLAINT AND DECLARATORY JUDGMENT**

**TO THE HONORABLE COURT:**

Comes now Plaintiff the Puerto Rico Electric Power Authority ("PREPA"), through the Third-Party Procurement Office ("3PPO"), administered by Regulatory Compliance Services, Corp. ("RECOMS"), and through its undersigned legal representation, respectfully files this Amended Complaint against Defendants NFEnergia LLC ("NFE"), New Fortress Energy Inc. ("NFE Parent" or "New Fortress"), Atlantic Energy Holdings LLC ("Atlantic"), Insurance Companies A, B, and C, and Corporations X, Y, and Z, and states, alleges, and requests the following:

## I. NATURE OF THE ACTION

1. This action is of a mixed nature, including legal and equitable claims, and is directed at the collection of liquid and enforceable sums, as well as obtaining declaratory and specific performance remedies, all arising from Defendants' systematic breach of contract of multiple fuel supply agreements governing the delivery of liquefied natural gas ("LNG")

to Puerto Rico's critical power generation infrastructure. Over a period extending from October 2024 through October 2025, NFE has persistently failed to deliver contracted LNG volumes, forcing Puerto Rico's generation facilities to operate on significantly more expensive diesel fuel, resulting in excess fuel costs exceeding FIFTY-FOUR MILLION NINE HUNDRED SIXTY-TWO THOUSAND THIRTY DOLLARS AND SIXTY-SIX CENTS ($54,962,030.66).

2. NFE's delivery failures did not arise from any genuinely unforeseeable or external cause. They originated from NFE's own operational negligence and regulatory non-compliance. First, NFE deployed oversized LNG vessels in San Juan Harbor that obstructed the federal navigable channel in violation of 33 U.S.C. § 409, which led the U.S. Coast Guard ("USCG") to issue a Letter of Warning and to revoke NFE's authorization for ship-to-ship ("STS") LNG transfer operations. Second, NFE failed to arrange and maintain tugboat resources conforming to the requirements established by the USCG and the San Juan Bay Harbor Pilots, instead relying on substitute tugs that did not meet those requirements and underperformed, which precipitated the harbor restrictions that NFE later invoked as a purported force majeure event. Having created these conditions through its own conduct, NFE then compounded them by invoking force majeure opportunistically to avoid its contractual payment obligations rather than accepting responsibility for its self-inflicted operational failures. NFE further mischaracterized the duration and impact of unrelated events to manufacture additional force majeure claims, representing, for example, that the USACE dredging at its berth would interrupt deliveries for only 24 to 36 hours when the actual disruption did not materialize until months later and lasted approximately ten days.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Plaintiff PREPA is a citizen of the Commonwealth of Puerto Rico. Defendant NFEnergia LLC is a citizen of the States of Delaware and New York. Defendant New Fortress Energy Inc. is a citizen of the States of Delaware and New York. Upon information and belief, Defendant Atlantic Energy Holdings LLC is a citizen of the States of Delaware and New York, its sole member being New Fortress Energy Inc., a corporation incorporated in Delaware with its principal place of business in New York. Complete diversity of citizenship therefore exists between Plaintiff and Defendants.

4. This action is brought by PREPA as the owner of the Legacy Generation Assets and the real party in interest with respect to the Fuel Sale and Purchase Agreement ("FSPA"), the Natural Gas Sale and Purchase Agreement ("NGSPA"), and the Energy Exigency Short-Term Natural Gas Sale and Purchase Agreement ("Exigency Contract"). Under the Puerto Rico Thermal Generation Facilities Operation and Maintenance Agreement dated January 24, 2023 (the "OMA"), a true and correct copy of which was filed as Exhibit K and is incorporated by reference, PREPA remains the owner of, and the principal with respect to, the rights and claims arising under the fuel supply agreements at issue. PREPA has authorized the Third-Party Procurement Office ("3PPO"), administered by Regulatory Compliance Services, Corp. ("RECOMS"), to administer and enforce those claims, as set forth in paragraph 5 below. The 3PPO and RECOMS appear solely in that representative and enforcement capacity and are not parties to this action; their respective citizenships are not at issue for purposes of diversity jurisdiction.

5. The authority to prosecute this action on PREPA's behalf derives from PREPA's ownership of the claims and from PREPA's express delegation of enforcement authority to the 3PPO, as set forth below. By letter dated December 19, 2025, PREPA, acting through its Executive Director, expressly consented to and authorized the 3PPO to administer, execute, and enforce the claims arising under the FSPA, and confirmed that the 3PPO already held the mandate of representation for the NGSPA and the Exigency Contract. A true and correct copy of that consent was filed as Exhibit L and is incorporated by reference. The 3PPO, administered by RECOMS, serves as the independent procurement-oversight body charged with managing procurement activities and neutralizing actual or apparent conflicts of interest pursuant to the Professional Services Agreement dated July 24, 2025 (Contract No. 2025-PPP021), a true and correct copy of which was filed as Exhibit J and is incorporated by reference, and it is through that procurement and conflict-neutralization function that undersigned outside counsel was retained.

6. This Court has supplemental jurisdiction over all related claims pursuant to 28 U.S.C. § 1367(a), as such claims arise from the same case or controversy as Plaintiff's primary claims.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District, and further pursuant to the mandatory and exclusive forum selection clauses contained in each of the FSPA, the NGSPA, and the Exigency Contract, each of which designates the United States District Court for the District of Puerto Rico as the exclusive forum for the resolution of disputes arising thereunder.

8. Defendants are subject to the personal jurisdiction of this Court. NFEnergia LLC maintains continuous and uninterrupted operations at the Port of San Juan, located in this District, has designated a resident agent in the Commonwealth of Puerto Rico for service of process, and has expressly submitted to the jurisdiction of this Court pursuant to the forum selection clauses contained in the FSPA, the NGSPA, and the Exigency Contract.

9. The contracts governing this controversy, the FSPA, the NGSPA, and the Exigency Contract, contain choice-of-law clauses designating the substantive laws of the Commonwealth of Puerto Rico, including the Civil Code of Puerto Rico of 2020, as the law applicable to all disputes, without regard to conflict-of-laws principles.

## III. THE PARTIES

### A. The Plaintiff

10. PREPA is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, created by Act No. 83 of May 2, 1941, as amended, 22 L.P.R.A. § 191 et seq., with the capacity to sue and be sued in its own name. PREPA owns the Legacy Generation Assets and is the contracting principal and holder of the rights and claims arising under the FSPA, the NGSPA, and the Exigency Contract. For purposes of 28 U.S.C. § 1332, PREPA is a citizen of the Commonwealth of Puerto Rico.

### B. The Defendants

11. Defendant NFEnergia LLC ("NFE") is a limited liability company organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico. The sole member of NFEnergia LLC is Atlantic Energy Holdings LLC. Atlantic Energy Holdings LLC is wholly owned by New Fortress Energy Inc., a

corporation incorporated under the laws of the State of Delaware with its principal place of business in New York, New York. NFEnergia LLC is therefore a citizen of the States of Delaware and New York. NFE is the direct contractual counterparty under the fuel supply contracts at issue and operates the LNG infrastructure at the Port of San Juan that supplies fuel to the generation facilities operated on PREPA's behalf.

12. Defendant New Fortress Energy Inc. ("NFE Parent" or "New Fortress") is a corporation organized under the laws of the State of Delaware, listed on the NASDAQ stock exchange under the symbol "NFE," with its principal place of business at 111 W. 19th Street, 8th Floor, New York, New York 10011, and is a citizen of the States of Delaware and New York. New Fortress is the ultimate parent of NFEnergia LLC.

13. Defendant Atlantic Energy Holdings LLC ("Atlantic") is a limited liability company. Upon information and belief, the sole member of Atlantic is New Fortress Energy Inc., a corporation incorporated under the laws of the State of Delaware with its principal place of business at 111 W. 19th Street, 8th Floor, New York, New York 10011. Atlantic is therefore a citizen of the States of Delaware and New York. Atlantic is the parent of NFEnergia LLC, and both NFEnergia LLC and Atlantic are owned, directly or indirectly, by New Fortress Energy Inc. Atlantic is named as a Defendant in its capacity as Seller's Parent and guarantor under the FSPA.

14. Defendants Insurance Companies A, B, and C are fictitious names for one or more insurance companies that, at the times relevant to this Complaint, had issued in favor of NFEnergia LLC or New Fortress Energy Inc. one or more policies of liability insurance covering the acts, omissions, breaches, and damages alleged herein, and that are therefore directly liable to Plaintiff pursuant to the direct-action provisions of 26 L.P.R.A. § 2003.

Their true names and capacities are presently unknown to Plaintiff, who will seek leave to amend to substitute their true names once ascertained.

15. Defendants Corporations X, Y, and Z are fictitious names for one or more persons or entities, presently unknown to Plaintiff, who may be liable to Plaintiff for the acts, omissions, breaches, or damages alleged herein, whether as affiliates, successors, sureties, guarantors, or otherwise. Plaintiff will seek leave to amend to substitute their true names and capacities once ascertained.

## IV. FACTS

### A. The Contracts Governing the Commercial Relationship

16. On March 5, 2019, NFE and PREPA executed the FSPA, for the supply of liquefied natural gas to fuel Units 5 and 6 of the San Juan Plant. The FSPA established specific delivery obligations for NFE under the schedule agreed by the parties. Clause 9.1 of the FSPA provides that, in the event of non-delivery not excused by a valid force majeure event, NFE is obligated to make Seller Deficiency Payments equivalent to the Backup Fuel Coverage Amount, calculated as the difference between the cost of the alternative fuel (diesel) and the contracted price of the LNG. A true and correct copy of the FSPA was filed as Exhibit A and is incorporated by reference.

17. On March 15, 2024, NFE and Genera, as Operator on PREPA’s behalf, executed the NGSPA, for the supply of LNG to the temporary generation facilities located at the San Juan and Palo Seco Plants. Under Article V.3 of the NGSPA, NFE assumed the express and unconditional obligation to deliver the Contracted Monthly Quantity of natural gas in accordance with the technical specifications and the agreed schedule. Article VI.1 of the NGSPA provides that any failure to deliver automatically triggers NFE’s obligation to

make a Seller Deficiency Payment, calculated under the formula established in the contract. A true and correct copy of the NGSPA was filed as Exhibit B and is incorporated by reference.

18. Following the expiration of the original term of the NGSPA in July 2025, and in light of the critical need to secure continuous fuel supply for the Island's electric generation, Genera issued a formal declaration of energy exigency on July 16, 2025. The parties then executed the Exigency Contract dated July 17, 2025. That contract was extended through multiple amendments, reflecting the continuing need for supply and NFE's reluctance to commit to long-term terms. The Exigency Contract contains deficiency provisions substantially similar to those of the NGSPA. A true and correct copy of the Exigency Contract and its amendments was filed as Exhibit C and is incorporated by reference.

**B. NFE's Monopoly Position in the Puerto Rico LNG Market**

19. NFE operates the only LNG receipt, regasification, and handling facility in the northern part of Puerto Rico. That facility, located at Piers A and B of the Port of San Juan and known as the Microfuel Handling Facility (the "MFH Facility"), constitutes the sole point of entry for LNG destined to supply the San Juan generation facilities. As a result, NFE was the only available source of LNG for the San Juan generation facilities, leaving PREPA and its operator without a viable alternative supply in the face of Defendants' breaches.

20. NFE's monopoly position was further entrenched when, in the competitive procurement process conducted by the 3PPO under RFP 3PPO-1125-17-MSIN, NFE's proposal was declared non-conforming due to critical deficiencies in its submission, including the absence of the required bid bond and the late submission of mandatory documents. Despite that formal disqualification, and given the absence of viable supply alternatives in the north

of Puerto Rico, NFE continued as the sole supplier under successive contractual extensions and exigency arrangements, exploiting its market-dominant position.

**C. The Revocation of the USCG Authorization and the Creation of Self-Inflicted Force Majeure**

21. On September 26, 2018, the USCG issued a Letter of Recommendation ("LOR") after completing a maritime safety assessment pursuant to the Ports and Waterways Safety Act. The USCG determined that the waterways of the Port of San Juan toward Piers A and B were suitable for LNG maritime traffic, subject to the conditions and limitations specified, including restrictions on vessel size. The 2018 LOR was issued in response to NFE's proposal contained in its Waterway Suitability Assessment ("WSA") and was conditioned on the use of "pocket-sized" vessels of 30,000 $m^3$. That LOR did not constitute an open-ended and indefinite authorization, but rather an authorization subject to the operational parameters that NFE itself had committed to. A true and correct copy of the 2018 LOR was filed as Exhibit D[1] and is incorporated by reference.

22. On September 26, 2024, the USCG issued a new Letter of Recommendation that superseded the 2018 LOR. The USCG concluded that the waterway at the Port of San Juan was no longer suitable for the LNG operations proposed by NFE, citing the increased dimensions of the vessels that NFE had begun to use. According to the 2024 LOR, the vessels originally proposed by NFE had a combined beam of approximately 140 feet and

[1] The 2018 LOR package comprises the Letter of Recommendation and an accompanying LOR Analysis. The LOR Analysis is marked as Sensitive Security Information and is controlled under 49 C.F.R. Part 1520. To avoid the public disclosure of Sensitive Security Information, the LOR Analysis is not filed as part of the public record with this Complaint. Plaintiff will make the LOR Analysis available to the Court and to authorized parties in a separate selected parties filing.

did not obstruct the channel, whose operational limit was set at 150 feet from the pier. NFE unilaterally expanded the dimensions of its vessels to sizes that exceeded those limitations, causing the obstruction of the Army Terminal Turning Basin and the mouth of the Puerto Nuevo Channel. The physical dimensions of the Army Terminal Channel and the Puerto Nuevo Channel were 350 feet wide each, and had been known to NFE since 2018, as documented in the WSA that NFE submitted to the USCG. A true and correct copy of the 2024 LOR was filed as Exhibit E and is incorporated by reference.

23. On October 2, 2024, the USCG formally informed NFE that, in order to permit the ship-to-ship ("STS") transfer operations of the vessel CNTIC VPOWER GLOBAL, it would be necessary to completely close the Army Terminal Channel, the Army Terminal Turning Basin, and the Puerto Nuevo Channel. Because such a closure would paralyze essential port operations, the USCG denied authorization for those operations, effectively preventing the discharge of LNG.

24. The USCG's regulatory actions did not constitute force majeure under Article 1166 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9318, which defines force majeure as an event that could not have been foreseen or that, if foreseen, was unavoidable. The USCG's actions were the direct, foreseeable, and avoidable consequence of NFE's own operational decisions to use oversized vessels that obstructed the waterways. NFE had known since 2018 the dimensions of the channel and the restrictions of the LOR, but deliberately chose to employ vessels incompatible with the safe operation of the port. The loss of STS privileges was therefore a foreseeable result directly attributable to NFE's negligent conduct.

25. In addition, the 2018 LOR Analysis (Exhibit D) imposed on NFE the express obligation to submit to the USCG an annual review of its WSA reflecting any change in vessel size (Recommendation No. 8). This annual notification obligation had the precise purpose of allowing the USCG to assess the continued suitability of the waterway in light of NFE's operational changes. Under either scenario, whether NFE complied with the notification and the USCG did not object, or NFE failed to provide it, the USCG's 2024 regulatory action does not constitute an unforeseen act of governmental authority under the standard of Article 1166.

**D. NFE's Invalid Force Majeure Claims**

26. On October 15, 2024, NFE issued a Notice of Force Majeure under the NGSPA, asserting that the USCG's denial of STS operations constituted an "extraordinary unforeseen act of a Governmental Authority" that excused its contractual breach. Plaintiff categorically rejects this characterization. Under Article 1166 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9318, the cited events do not satisfy the requirements of force majeure because they were directly caused by NFE's own negligent conduct. Furthermore, in its force majeure notice (Exhibit F), NFE asserted that it had carried out STS operations "in the exact same manner, in the exact same location within the port, including with this specific vessel, over the past several years" a representation that the 2024 LOR (Exhibit E) expressly refutes by documenting that NFE expanded the dimensions of its vessels. A true and correct copy of the Notice of Force Majeure dated October 15, 2024, was filed as Exhibit F and is incorporated by reference.

27. On October 24, 2024, NFE issued a second Notice of Force Majeure, this time citing dredging activities scheduled by the United States Army Corps of Engineers ("USACE") at the berth of the MFH Facility as additional justification for its breach. NFE initially represented that the resulting interruption would last between 24 and 36 hours. However, the operational impacts did not materialize until February 2025 (four months after the notice), and the actual duration of the interruption was approximately ten (10) days, far beyond what was represented. This discrepancy evidences NFE's pattern of invoking force majeure claims opportunistically and without basis. A true and correct copy of this Notice was filed as Exhibit G and is incorporated by reference.

28. On October 3, 2025, NFE submitted a third Notice of Force Majeure, citing a Temporary Restraining Order ("TRO") obtained by the San Juan Bay Harbor Pilots (the "Pilots"), which temporarily restricted the tugboat operations required for the safe entry of LNG vessels into the port. Plaintiff alleges that this TRO arose from litigation between NFE and the Pilots regarding tugboat equipment requirements and safety protocols, a controversy that is a direct consequence of NFE's own operational decisions. Unlike the October 2024 notice that listed five concrete mitigation actions, the October 3, 2025 notice (Exhibit H) does not identify any mitigation measure, limiting itself to a generic reference to "commercially reasonable efforts," in contrast with the obligations of Article 13.4 of the NGSPA. A true and correct copy of this Notice was filed as Exhibit H and is incorporated by reference.

29. Each of NFE's force majeure claims is invalid under Article 1166 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9318, for the following reasons: (a) the cited events were foreseeable and within NFE's reasonable control; (b) the events were directly caused

by NFE's own operational negligence and regulatory non-compliance; (c) NFE failed to demonstrate that it exercised due diligence to prevent or overcome the events; and (d) NFE breached the duty to mitigate established in Article 13.4 of the NGSPA. Where the impossibility of performance is attributable to the fault or negligence of the obligor itself, it does not constitute valid force majeure under Puerto Rico law.

**E. Magnitude of the LNG Delivery Deficiencies and Resulting Damages**

30. From October 2024 through October 2025, a period of thirteen (13) consecutive months, NFE's accumulated delivery deficiencies across the three contracts resulted in damages compensable under Article 1168 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9332. The excess fuel costs total FIFTY-FOUR MILLION NINE HUNDRED SIXTY-TWO THOUSAND THIRTY DOLLARS AND SIXTY-SIX CENTS ($54,962,030.66), representing direct consequential damage. This amount is broken down by contract as follows:

| **CONTRACT** | **DEFICIENCY PERIOD** | **DAMAGES (USD)** |
|---|---|---:|
| NGSPA | Oct. 2024 – Jul. 2025 | $12,800,202.48 |
| FSPA | Oct. 2024 – Oct. 2025 | $34,564,916.34 |
| Exigency Contract | Jul. 2025 – Oct. 2025 | $7,596,911.84 |
| **TOTAL** | | **$54,962,030.66** |

31. Under the NGSPA, the accumulated natural gas Deficiency totaled 2,756,107 MMBtu between October 2024 and July 2025. The month of February 2025 represented the most severe monthly deficiency, with a shortfall of 785,519 MMBtu that corresponded to $3,772,631.71 in excess diesel costs for that single month. This magnitude of deficiency evidences not a temporary excusable interruption, but a systematic pattern of contractual

breach that, under Article 1167 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9331, obligates NFE to indemnify the damages caused.

**F. NFE's Pattern of Willful Conduct**

32. Throughout the dispute resolution process and in its general contractual conduct, NFE has engaged in a persistent and documentable pattern of willful conduct (dolo) under Article 1164 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9316, through actions directed at delaying the performance of its obligations, evading contractual responsibility, and keeping Plaintiff and its operator in a position of operational uncertainty. This pattern includes, without limitation, the following actions:

33. Manipulation of Contract Extensions: Instead of extending the NGSPA for the full one-year period contemplated in its renewal provisions, NFE agreed only to an initial extension of 100 days. Subsequently, NFE negotiated progressively shorter extensions: first four days, then twelve days, then only two days. Finally, NFE refused to execute a proposed fifth amendment, leaving Puerto Rico without a binding LNG supply agreement as of mid-July 2025. This pattern evidences a deliberate attempt to keep PREPA and its operator in a position of uncertainty and dependence while NFE preserved its ability to impose unilateral terms.

34. Unauthorized Vessel Departure: On July 12, 2025, the LNG vessel operated by NFE, which was at that time the only source of LNG for the temporary generation units, departed the Port of San Juan without contractual authorization and without adequate prior notice, placing the Island's electric grid at immediate operational risk. The vessel returned to port

only after the 3PPO issued formal notices of contractual breach and governmental officials intervened.

35. Systematic Delays in the Dispute Resolution Process: After the formal initiation of the contractual claim process by notice dated December 19, 2025, NFE engaged in dilatory tactics designed to avoid the substantive resolution of the controversy. NFE allowed the 20-calendar-day dispute resolution period to elapse in full without offering any substantive commitment. A meeting originally scheduled for January 9, 2026, was unilaterally postponed by NFE and ultimately held on January 23, 2026. Following that meeting, instead of offering a substantive response, NFE circulated on January 26, 2026, a Request for Information ("RFI") apparently designed to shift its own burden of proof to the 3PPO.

36. Failure to Substantiate the Force Majeure Claims: As of the date of filing of this Complaint, more than sixty (60) days have elapsed since the formal notice of claim dated December 19, 2025. Through follow-up communications dated February 24, 2026, and March 18, 2026, the latter requiring full payment or complete contractual substantiation of the force majeure allegations within five (5) days, NFE has not: (a) offered any payment of the amounts owed; (b) provided documentary substantiation of its force majeure claims; (c) produced sufficient evidence to justify or modify the outstanding balance; nor (d) demonstrated good faith in the resolution negotiations. A true and correct copy of the Formal Notice of Contractual Claim dated December 19, 2025, was filed as Exhibit I and is incorporated by reference.

**G. Satisfaction of Conditions Precedent**

37. Plaintiff and its operating agent have fully complied with all of the contractual obligations incumbent upon them under the FSPA, the NGSPA, and the Exigency Contract, including the acceptance of all LNG volumes actually delivered, the timely and complete payment of all amounts received, cooperation with NFE's operational requirements, and the provision of access to the receipt facilities. To the extent any obligation was not performed, Plaintiff was excused from such performance by NFE's own acts or omissions.

38. Plaintiff has fully satisfied all contractual conditions precedent to the filing of this action, including all required contractual notices, all formal demands for performance, and all requirements of the dispute resolution process established in the contracts. All contractual prerequisites to litigation have been exhausted without NFE having performed its obligations or demonstrated any intention to do so.

## V. CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT – NGSPA

39. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

40. The NGSPA, executed on March 15, 2024, constitutes a valid, binding, and enforceable contract under Puerto Rico law. Under its Articles V.3 and VI.1, NFE assumed the express and unconditional obligation to deliver the Contracted Monthly Quantity of natural gas in accordance with the agreed schedule and specifications, and any failure to deliver not excused by valid force majeure automatically triggers the obligation to make Seller Deficiency Payments.

41. NFE materially and substantially breached the NGSPA by failing to deliver the contracted volumes during the period from October 2024 through July 2025, resulting in accumulated natural gas Deficiencies totaling 2,756,107 MMBtu over ten (10) consecutive months.

42. The force majeure defense invoked by NFE fails as a matter of law and fact, because the events cited do not meet the standard of Article 1166 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9318, having been directly caused by NFE's own negligent conduct, including the use of oversized vessels that violated the channel restrictions established in the 2018 LOR.

43. Under Article 1167 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9331, as a direct, proximate, and foreseeable result of the breach of the NGSPA, Plaintiff has suffered compensable damages in the amount of TWELVE MILLION EIGHT HUNDRED THOUSAND TWO HUNDRED TWO DOLLARS AND FORTY-EIGHT CENTS ($12,800,202.48), representing the excess fuel costs incurred from substituting the undelivered LNG with diesel.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants, jointly and severally, on the First Cause of Action in an amount not less than $12,800,202.48, plus interest, costs, and attorney's fees as permitted by the contracts and applicable law.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT – FSPA**

44. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

45. The FSPA, executed on March 5, 2019, constitutes a valid, binding, and enforceable contract governing the supply of LNG for Units 5 and 6 of the San Juan Plant. Under its Clause 9.1, NFE assumed the obligation to deliver the scheduled quantities of LNG, and

the failure to deliver not excused by valid force majeure triggers the obligation to pay the Backup Fuel Coverage Amount.

46. NFE materially and substantially breached the FSPA by failing to deliver the contracted volumes during the period from October 2024 through October 2025, resulting in significant natural gas Deficiencies over thirteen (13) consecutive months. For the reasons stated above, NFE's force majeure defense is invalid under Article 1166 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9318, and does not excuse its breach.

47. As a direct, proximate, and foreseeable result of the breach of the FSPA, Plaintiff has suffered compensable damages in the amount of THIRTY-FOUR MILLION FIVE HUNDRED SIXTY-FOUR THOUSAND NINE HUNDRED SIXTEEN DOLLARS AND THIRTY-FOUR CENTS ($34,564,916.34), under Article 1168 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9332.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants, jointly and severally, on the Second Cause of Action in an amount not less than $34,564,916.34, plus interest, costs, and attorney's fees as permitted by the contracts and applicable law.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT – EXIGENCY CONTRACT

48. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

49. The Exigency Contract, executed on July 17, 2025, and amended on subsequent occasions, constitutes a valid, binding, and enforceable contract under Puerto Rico law.

50. NFE materially and substantially breached the Exigency Contract by failing to deliver the contracted volumes of LNG during the period from July 2025 through October 2025. As a result, Plaintiff has suffered damages in the amount of SEVEN MILLION FIVE

HUNDRED NINETY-SIX THOUSAND NINE HUNDRED ELEVEN DOLLARS AND EIGHTY-FOUR CENTS ($7,596,911.84) in excess fuel costs, under Article 1168 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9332.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants, jointly and severally, on the Third Cause of Action in an amount not less than $7,596,911.84, plus interest, costs, and attorney's fees as permitted by the contracts and applicable law.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT – INVALIDITY OF THE FORCE MAJEURE CLAIMS**

51. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

52. An actual, substantial, and justiciable controversy exists between the parties regarding the validity of NFE's force majeure claims under Article 1166 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9318. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, this Honorable Court has authority to declare the rights and legal relations of the parties.

53. Plaintiff respectfully requests a declaratory judgment establishing: (a) that the USCG's revocation of the STS operations authorization dated September 26, 2024, does not constitute force majeure, having been directly caused by NFE's regulatory non-compliance and operational negligence; (b) that the USACE dredging events do not constitute force majeure because of their short duration, their foreseeability, and NFE's failure to mitigate; (c) that the TRO cited in the October 3, 2025 notice does not constitute force majeure because it arose from disputes generated by NFE's own conduct; (d) that NFE bears the burden of proving the existence of force majeure under Article 1166 and has not satisfied

that burden; and (e) that NFE's payment obligations under the three contracts are neither suspended nor extinguished and are fully enforceable.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a declaratory judgment as set forth above, together with costs and such further relief as the Court deems just.

**FIFTH CAUSE OF ACTION**
**BREACH OF THE DUTY TO MITIGATE**

54. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

55. Under Article 13.4 of the NGSPA and the corresponding provisions of the FSPA and the Exigency Contract, even where a force majeure event is validly established, the affected party retains a continuing and affirmative duty to use commercially reasonable efforts to mitigate the impact of the event and resume performance as soon as reasonably possible.

56. This obligation derives not solely from the contractual covenant in Article 13.4 of the NGSPA and analogous provisions, but also constitutes a requirement of the general principle of good faith in the performance of contractual obligations, enshrined in Article 1062 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 8983.

57. NFE materially and substantially failed to exercise the commercially reasonable mitigation efforts it was obligated to undertake, including: (a) the failure to procure appropriately sized LNG vessels complying with the channel restrictions established in the 2018 LOR; (b) the failure to resolve, timely and diligently, the regulatory compliance matters with the USCG; (c) the failure to maintain appropriate commercial relationships with the port service providers; and (d) the failure to pursue alternative LNG delivery methods that could have mitigated the impact of the interruptions.

58. NFE's failure to comply with its duty to mitigate independently renders its force majeure defense unavailable and subjects it to full contractual liability for all damages resulting from its breaches.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants, jointly and severally, on the Fifth Cause of Action for all damages resulting from NFE's breaches, plus interest, costs, and attorney's fees as permitted by the contracts and applicable law.

**SIXTH CAUSE OF ACTION**
**WILLFUL BREACH OF CONTRACT (DOLO)**

59. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

60. Under Article 1164 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9316, dolo in the performance of an obligation consists of the deliberate and bad-faith breach of that obligation, and Article 1168 establishes that an obligor who acts with dolo is liable for all damages that derive from its breach, including those not foreseeable at the time the obligation was contracted. NFE has engaged in willful conduct through the following actions: (a) the progressive and manipulative shortening of the contract extensions to keep Plaintiff in a position of uncertainty and to impose unilateral terms; (b) the unauthorized departure of the LNG vessel on July 12, 2025, endangering the electric grid of Puerto Rico; (c) the shifting of the burden of proof through the January 2026 RFI, designed to delay the resolution process; (d) the refusal to substantiate its force majeure claims while simultaneously refusing to pay the amounts owed; and (e) the systematic use of its position as sole supplier to extract favorable contractual terms while breaching its obligations.

61. The described conduct constitutes intentional breach of NFE's contractual obligations, generating liability for the entirety of the damages derived from such breach.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants, jointly and severally, on the Sixth Cause of Action for all damages derived from NFE's willful breach, plus interest, costs, and attorney's fees as permitted by the contracts and applicable law.

**SEVENTH CAUSE OF ACTION**
**DEFAULT INTEREST**

62. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

63. Under Article 1169 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9333, when the obligation consists of the payment of a sum of money and the obligor is in default, the indemnification of damages absent any agreement to the contrary consists of the payment of legal interest. NFE has been in default since the date on which each deficiency payment was due under the terms of the contracts and continues in default as of the date of filing of this Complaint.

64. Plaintiff is entitled to default interest on the amounts owed from the due date of each obligation until full payment, at the legal rate established in Article 1169.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award default interest on all amounts owed from the due date of each obligation until full payment.

**VI. DAMAGES**

65. As a direct, proximate, and foreseeable result of Defendants' actions, omissions, and breaches, and under Articles 1167 and 1168 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. §§ 9331-9332, Plaintiff has suffered and continues to suffer the following categories of compensable damages:

(a) Excess fuel costs totaling FIFTY-FOUR MILLION NINE HUNDRED SIXTY-TWO THOUSAND THIRTY DOLLARS AND SIXTY-SIX CENTS ($54,962,030.66),

resulting from the substitution of undelivered LNG with diesel during the period from October 2024 through October 2025;

(b) Default interest on the amounts owed under Article 1169 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9333, from the due date of each obligation until full payment;

(c) Additional costs and expenses incurred in the emergency procurement of alternative fuel, including transportation, storage, and handling costs;

(d) Costs associated with regulatory compliance activities, governmental reporting, and additional oversight required as a consequence of NFE's breaches;

(e) Attorney's fees and costs of suit as permitted by the contracts and applicable law;

(f) Consequential damages to the power generation infrastructure resulting from prolonged operation on alternative fuel, including accelerated equipment wear and increased maintenance costs;

(g) Additional damages resulting from NFE's willful conduct (dolo) under Article 1164 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9316; and

(h) Any other relief that this Honorable Court, in the exercise of its discretion and equity, deems just and appropriate under the circumstances of the case.

## VII. JURY DEMAND

Plaintiff demands trial by jury of all causes of action so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff the Puerto Rico Electric Power Authority, through the Third-Party Procurement Office (3PPO), administered by Regulatory Compliance Services, Corp. (RECOMS), respectfully requests:

A. Compensatory damages in an amount not less than FIFTY-FOUR MILLION NINE HUNDRED SIXTY-TWO THOUSAND THIRTY DOLLARS AND SIXTY-SIX CENTS ($54,962,030.66), plus such additional amounts as may be established through discovery and at trial;

B. A declaratory judgment, under 28 U.S.C. §§ 2201-2202, that NFE's force majeure claims under Article 1166 of the Civil Code of Puerto Rico of 2020 are invalid, do not excuse the performance of its contractual obligations, and do not extinguish or suspend its payment obligations;

C. A declaratory judgment that the outstanding deficiency amounts under the three contracts are due and payable in full, without reductions for NFE's invalid force majeure claims;

D. Default interest under Article 1169 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9333, from the due date of each obligation until full payment;

E. Attorney's fees, costs, and expenses of this action as permitted by the contracts and applicable law.

I HEREBY CERTIFY that I filed this pleading through the CM/ECF of the Court and that a copy of this amended complaint was served upon counsel for the Defendants by electronic mail.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this 21 day of August, 2026.

s/ Max Pérez-Bouret
Lcdo. Max Pérez-Bouret
USDC-PR Bar No. 222612
Calle O'Neill G-14, Suite A
San Juan, PR 00918
Tel. 787-990-5212
Email: maxperezbouret@lexmaxpr.com

## LIST OF EXHIBITS

The exhibits referenced in this Amended Complaint, Exhibits A through L, were filed with the Court at Docket Entry No. 2 (Notice of Filing of Exhibits, Attachment 1, Exhibits A through L, related to Docket Entry No. 1) and are incorporated herein by reference. To avoid duplicative filing, they are not reattached to this Amended Complaint.

Exhibit A – FSPA Contract (March 5, 2019)
Exhibit B – NGSPA Contract (March 15, 2024)
Exhibit C – Exigency Contract and Amendments (July 17, 2025, onward)
Exhibit D – USCG Letter of Recommendation (September 26, 2018). The accompanying LOR Analysis is Sensitive Security Information under 49 C.F.R. Part 1520; it is not included in the public filing and will be made available to the Court and parties.
Exhibit E – USCG Letter of Warning and New LOR (September 26, 2024)
Exhibit F – NFE Notice of Force Majeure – USCG and STS (October 15, 2024)
Exhibit G – NFE Notice of Force Majeure – USACE Dredging (February 14, 2025)
Exhibit H – NFE Notice of Force Majeure – TRO and Pilots (October 3, 2025)
Exhibit I – 3PPO Formal Notice of Contractual Claim (December 19, 2025)
Exhibit J – Professional Services Agreement, 3PPO / RECOMS (Contract No. 2025-PPP021), dated July 24, 2025
Exhibit K – Puerto Rico Thermal Generation Facilities Operation and Maintenance Agreement (January 24, 2023)
Exhibit L – PREPA Consent for 3PPO Representation and Claims Enforcement (December 19, 2025)